# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BRYCE M.,**[1] ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **ANDREW M. SAUL,** ) <br> **Commissioner of Social Security,** ) <br> ) <br> **Defendant.** ) <br> _____) | **CIVIL ACTION** <br><br> **No. 20-1071-JWL** |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) evaluation of the medical opinions, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed applications for DIB and SSI benefits on January 9, 2017. (R. 12). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in weighing the medical opinions by according no weight to the opinion of Dr. Berg, who examined him in December 2018, and great weight to the opinion of Dr. Mintz, who examined him in April 2017.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, the claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.     Discussion

Plaintiff claims "[t]he ALJ's reasons for affording Dr. Mintz's opinion great weight and Dr. Berg's opinion no weight are not supported by substantial evidence, requiring remand."  (Pl. Br. 15).  He argues,

> when an ALJ discounts all of the relevant medical source opinions
> formulated by treating or examining sources—as is the case here—the ALJ
> is required to "point to specific contrary or inconsistent evidence, and to
> explain why that record evidence which supports those medical source
> opinions is less persuasive or less significant than the contrary or
> inconsistent evidence."

4

(Pl. Br. 16) (quoting Kinnard v. Berryhill, No. 17-1004-JWL, 2017 WL 5731291, at *6 (D. Kan. Nov. 28, 2017)).

Plaintiff argues, "The ALJ erred by ignoring probative evidence that did not support his decision." Id. at 18 (citing Oslin v. Barnhart, 69 Fed. App'x. 942, 947 (10th Cir. 2003); Briggs ex rel. Briggs v. Massanari, 248 F.3d 1235, 1239 (10th Cir. 2001); Kinnard, 2017 WL 5731291, at *6.). He argues the ALJ mischaracterized Plaintiff's daily activities and he accorded weight to Dr. Mintz's opinion as an expert in SSA rules and regulations, but not to that of Dr. Berg, although he is also such an expert. Id. at 20. He argues how, in his view, the record evidence relied upon by the ALJ to accord weight to Dr. Mintz's opinion and to discount Dr. Berg's opinion actually supports Dr. Berg's opinion, id. at 20-26, whereas Dr. Mintz's opinion "is consistent only with the ALJ's cherry-picked record and the opinions of the non-examining State agency consultants that were based on little more than Dr. Mintz's consultative examiner opinion." Id. at 26.

The Commissioner argues the evidence supports the ALJ's decision. He argues the evidence supports the reasons the ALJ gave both to accord great weight to Dr. Mintz's opinion and to accord no weight to Dr. Berg's opinion. (Comm'r Br. 7-8). He argues that, as the ALJ found, Plaintiff's presentation at Dr. Berg's examination was quite different from his presentation at Dr. Mintz's examination and "[e]ven if substantial evidence also supports Plaintiff's alternative narrative, the Court is precluded from accepting it or finding that the ALJ erred because the evidence could be read differently." Id. at 8 (citing Allman v. Colvin, 813 F.3d 1326, 1333 (10th Cir. 2016)).

In his Reply, Plaintiff argues:

5

this case is not one where the date of the opinion[s] renders one stale as opposed to the other.  Rather, Dr. Berg's opinion was based on additional information in the form of explanations from [Plaintiff]'s mother which provided significantly better understanding of [Plaintiff]'s abilities.  The record shows that [Plaintiff] had limited capacity for verbal responses and even Dr. Berg noted that [Plaintiff] answered questions with brevity.  Therefore, Dr. Berg had the benefit of gaining another perspective on [Plaintiff]'s reports of activities and abilities that Dr. Mintz did not have.

Dr. Berg, as opposed to Dr. Mintz, provided explanations as to how these deficits affected [Plaintiff]'s presentation at the examination and limited his abilities in a work setting.  Dr. Berg opined [Plaintiff] was functioning within the borderline range of intellectual ability as reflected by his capacity for verbal expression.  Dr. Berg said [Plaintiff]'s thinking was "impoverished, concrete and disrupted by anxiety and ruptures in reality testing in the form of auditory hallucinations and possibly delusional fears."  He also noted [Plaintiff]'s long-term memory was limited as his recall of his personal history was impoverished.  This thorough evaluation of [Plaintiff]'s conditions as a whole was appropriate under the regulations.  SSR 85-16, 1985 WL 56855, at *2 (Jan. 1, 1985) (In analyzing evidence of mental health impairments and their impact on the RFC, "it is necessary to draw meaningful inferences and allow reasonable conclusions about the individual's strengths and weaknesses" and the ALJ should consider factors such as level of intellectual functioning.).  Neither the ALJ nor Dr. Mintz adequately considered these factors in assessing [Plaintiff]'s reported daily activities or in assessing his functional abilities.

Dr. Berg recognized [Plaintiff]'s deficits and obtained additional information in the form of [Plaintiff]'s mother's statements to better understand [Plaintiff]'s functioning.  [Plaintiff]'s mother provided Dr. Berg with background information including increased anxiety causing him to become dysfunctional.  For example, she described a situation in which he was driving and was involved with a mild fender bender and he responded by fleeing the scene, returning home to hide in a closet, and insisting on remaining in the closet.  She also described an incident where he could not control his anger when a service man came to the house and he screamed at the individual.  Dr. Berg considered these statements in combination with the numerous abnormal examination findings when creating his opinion of [Plaintiff]'s functioning.

Contrary to Defendant's assertion, this case is not one in which two conclusions could be drawn based on the same evidence; therefore, requesting this court to reweigh the evidence.  Rather, this case is one in

which further development of the record, especially regarding [Plaintiff]'s true abilities in daily activities, shows that Dr. Berg's opinion more adequately portrays [Plaintiff]'s functioning based on the record as a whole.

(Reply 2-3) (citations omitted).

### A.     **The ALJ's Evaluation of the Medical Opinions**

The court quotes in its entirety the ALJ's evaluation of all the medical source opinions:

> In forming the claimant's residual functional capacity, the undersigned considered the opinions of State [sic] agency mental health consultants Margaret Sullivan, Ph.D., and Carol A. Adams, Psy.D.  Both Dr. Sullivan and Dr. Adams opined that the claimant retains the ability to understand and remember simple instructions (See, e.g., Exhibits 1A, p.10; 8A, p.11). Both Dr. Sullivan and Dr. Adams opined that the claimant is able adapt [sic] to most changes within a competitive work setting (Exhibits 1A, p.10; 8A, p.12).  Dr. Adams opined that infrequent public interactions would be appropriate for the claimant (Exhibit 8A, p.11).  The undersigned gave great weight to both opinions, as they are consistent with the mental status examinations throughout the record.  Furthermore, although both Dr. Sullivan and Dr. Adams are non-examining sources, a detailed explanation supports both opinions.  Finally, as State [sic] agency mental health consultants, both Dr. Sullivan and Dr. Adams are experts on the Social Security Administration's rules and regulations.
>
> The undersigned also considered the April 2017 opinion of consultative examiner Stanley Mintz, Ph.D.  Dr. Mintz opined that the claimant is able to understand simple and intermediate job instructions (Exhibit 6F, p.5). Dr. Mintz opined that he appears capable of performing both unskilled and semi-skilled work tasks (Exhibit 6F, p.5).  Dr. Mintz opined that he appears capable of relating adequately to co-workers, supervisors, and the public (Exhibit 6F, p.5).  The undersigned gave great weight to Dr. Mintz's opinion, as it is consistent with his detailed examination notes.  Dr. Mintz's opinion is also supported by the claimant's activities of daily living, described above.  Finally, as a consultative examiner, Dr. Mintz is an expert on the Social Security Administration's rules and regulations.
>
> The undersigned also considered the August 2018 opinion of licensed clinical social worker Brian Meunchi.  Mr. Meunchi opined that the claimant experiences a number of "marked" or "extreme" mental

limitations; including the ability to: (1) maintain attention and concentration for extended period; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) work in coordination with or proximity to others without being distracted by them; (4) complete a normal workday or workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest breaks; (5) respond appropriately to changes in the work setting; (6) travel in unfamiliar places or use public transportation; and (7) set realistic goals or make plans independently of others (Exhibit 20F, p.3). Mr. Meunchi further opined that the claimant would miss more than four days of work a month and be off-task more than twenty-five percent of a typical workday (Exhibit 20F, p.2).

The undersigned gave little weight to Dr. [sic] Menuchi's[2] opinion, as the mental status examinations throughout the record do not support the marked or extreme limitations. For example, while Mr. Meunchi opined that the claimant would have difficulty maintaining attention and concentration, he displays the ability to perform simple calculations, perform a serial three test, and spell the word "world" backward (Exhibit 6F, p.5). Furthermore, Mr. Menuchi's opinion is not supported by the claimant's activities of daily living. Finally, as a licensed clinical social worker, Mr. Meunchi is not an acceptable medical source.

The undersigned also considered the December 2018 opinion of consultative examiner Melvin Berg, Ph.D. Dr. Berg opined that the claimant is unable to perform even simple, unskilled tasks (Exhibit 24F, p.3). Dr. Berg further opined that the claimant's ability to accommodate to the demands of superficial interpersonal interactions is impaired due to his anxiety (Exhibit 24F, p.3). Dr. Berg opined that the claimant experiences "marked" or "extreme" limitations in every enumerated area under the domains of interacting with others and understanding, remembering, and carrying out instructions (Exhibit 25F, p.1-2).

---

[2] The ALJ refers to this social worker as Mr. Meunchi or Mr. Menuchi. (R. 19-20). Plaintiff refers to him as Mr. Muench. (Pl. Br. 8, 9, 24). The Court Transcript Index refers to Exhibit 20F as a medical source statement of Brian Meunchi. (Doc. 12, Attach. 1, p. Index4). Exhibit 20F contains a cover sheet calling him Brian Muenchi. (R. 676). Finally, the medical source statement contains a signature under which the name is printed by hand: Muench. (R. 679). Although it is not absolutely clear which is the correct spelling, the court will use Mr. Muench when referring to this social worker or his report.

> The undersigned gave no weight to Dr. Berg's opinion, as the claimant's statements to Dr. Berg were inconsistent with the record. For example, while the claimant told Dr. Berg that he has never seen his one-year old (Exhibit 24F, p.2), Ms. Elwood testified that he sees the child three times a week (Hearing Testimony). In fact, there are pictures on Facebook of the claimant interacting with a young baby (Exhibit 23F, p.12). While he told Dr. Berg that he does not leave the house (Exhibit 24F, p.2), the record indicates that he attends concerts, conducts drive-thru transactions, drives, and attends family gatherings. Moreover, the claimant's presentation during his examination with Dr. Berg was not consistent with his presentation throughout the record, including a previous consultative examination. While Dr. Berg noted that the claimant was unable to perform a serial three test, spell a simple word in reverse, or recall even one word after a short delay (Exhibit 24F, p.2), he successfully performed these tasks during previous examinations (Exhibit 6F, p.5). Finally, as a consultative examiner, Dr. Berg only had the opportunity to conduct a one-time examination of the claimant.
>
> The undersigned gave little weight to the opinions formed prior to the claimant's attainment of age eighteen (See generally Exhibits 1F - 4F; 16F - 19F; 21F), as they were formed at least three years prior to the amended alleged onset date.

(R. 19-20).

## B.   Standard for Weighing Medical Source Opinions

For claims filed before March 17, 2017, as was the claim in this case, where there is no acceptable medical source who has treated the claimant and provided an opinion regarding the claimant's condition and functional abilities, all medical source opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. 20 C.F.R. §§ 404.1527(c), 416.927(c). Those factors are: (1) examining relationship; (2) treatment relationship, including length of relationship, frequency of examination, the nature and extent of the relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which a physician's

opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c).

Regarding the first factor, examining relationship, opinions of examining sources are generally given more weight than the opinions of nonexamining sources who have not examined the claimant but have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

Recognizing the reality that an increasing number of claimants have their medical care provided by health care providers who are not "acceptable medical sources," the Commissioner promulgated Social Security Ruling (SSR) 06-3p.  West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2020).  In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id. Rulings, 330-31.

SSR 06-3p explains that such opinions will be evaluated using the regulatory factors for evaluating medical opinions; id. at 331-32 (citing 20 C.F.R. §§ 404.1527, 416.927); and explains that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the ... decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Id. at 333; see also Frantz v. Astrue, 509 F.3d 1299, 1302 (10th Cir. 2007) (remanding for consideration of a nurse-practitioner's opinions in light of SSR 06-3p).

### C.     Analysis

The court finds no error in the ALJ's evaluation of the medical source opinions. The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Frantz, 509 F.3d at 1300; Hackett, 395 F.3d at 1172; White, 287 F.3d at 905. The starting point in the court's review is the rationale presented in the Commissioner's decision and not what another party, or even the court, might view as a "proper" weighing of the evidence. 42 U.S.C. § 405(g).

Other than arguing that the state agency psychologists "based their opinions on Dr. Mintz's report," and that Dr. Berg's opinion "is supported by the treating social worker opinion of Brian Muench, who opined some marked and extreme mental limitations as of August 2018" (Pl. Br. 24), Plaintiff does not address and attempt to demonstrate error in the ALJ's evaluation of the medical source opinions except to argue that Dr. Mintz's opinion was given too much weight and Dr. Berg's should have been given more.

11

The ALJ discounted Mr. Muench's opinion because "the mental status examinations throughout the record do not support the marked or extreme limitations," because it was not supported by Plaintiff's activities of daily living, and because Mr. Muench is not an acceptable medical source. (R. 20). Plaintiff stated "the ALJ appeared to discount [Mr. Muench's] opinions due to normal examination findings," and cited evidence of other-than-normal examination findings. (Pl. Br. 24). Assuming without deciding that Plaintiff's examination findings were other-than-normal, the ALJ did not discount Mr. Muench's opinion because of normal mental status examination findings but because the mental status examinations did not support such marked and extreme limitations. Moreover, Plaintiff does not point to record evidence compelling a finding of marked limitations ("2 standard deviations below the norm, or 60% overall reduction in performance." R. 677) or extreme limitations ("Impairment level precludes useful functioning" R. 677). Plaintiff does not address the other reasons given by the ALJ to discount Mr. Muench's opinion, and the court finds they are supported by the record evidence. The court finds no error in discounting Mr. Muench's opinion.

The ALJ accorded great weight to the state agency psychologists' opinions because they were "consistent with the mental status examinations throughout the record," the psychologists provided a detailed explanation in support of their opinions, and the psychologists "are experts on the Social Security Administration's rules and regulations." (R. 19). Except to suggest that the state agency psychologists merely parroted Dr. Mintz's opinion, Plaintiff does not address any of the reasons given to

accord great weight to these opinions. The court finds that the reasons given are supported by the record evidence.

The ALJ accorded no weight to Dr. Berg's opinion because Plaintiff's "statements to Dr. Berg were inconsistent with the record," his "presentation during his examination with Dr. Berg was not consistent with his presentation throughout the record," and Dr. Berg's was a one-time examination. (R. 20). Each of these reasons is amply supported by record evidence, and the ALJ provided specific examples of the inconsistencies in statements and in presentation—which are supported by the record. Plaintiff doesn't directly address these inconsistencies but suggests other evidence which in his view the ALJ ignored and which supports Dr. Berg's opinion.

As the court noted early in this opinion Plaintiff must point to evidence which compels a different finding from than that of the ALJ. Elias-Zacarias, 502 U.S. at 481, n.1. The fact that the record contains evidence which supports a different conclusion will not suffice. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Plaintiff's attempt in his Reply brief, quoted supra at 6-7, to cast Dr. Berg's report and other evidence as "further development of the record" rather than the possibility of drawing two inconsistent conclusions from the same evidence is merely an attempt to

13

convince the court that Dr. Berg had the better view of the evidence than did Dr. Mintz and the ALJ reached the wrong conclusion. This attempt fails because all the evidence was considered and weighed by the ALJ, even though not by Dr. Mintz. That the state agency psychologists did not have Dr. Berg's report and his evaluation of Plaintiff and of his mother's explanation is simply of no import. The ALJ had this evidence, weighed it, and found it less persuasive than the rest of the evidence in the record. He did not ignore that evidence. He found it unsupported by the weight of the evidence in the record. He did not cherry-pick other evidence. The evidence relied upon by the ALJ is substantial evidence (such relevant evidence as a reasonable mind might accept as adequate to support a conclusion) and the court may not substitute is judgment for that of the ALJ.

Plaintiff's argument that this court's decision in Kinnard requires a different conclusion because the ALJ discounted all the relevant medical source opinions formulated by treating or examining sources—apparently referring to Mr. Muench and Dr. Berg—without "point[ing] to specific contrary or inconsistent evidence, and … explain[ing] why that record evidence which supports those medical source opinions is less persuasive or less significant than the contrary or inconsistent evidence" (Pl. Br. 16) (quoting Kinnard, 2017 WL 5731291, at *6) (brackets and ellipsis added), fails for two reasons. First, the ALJ here did not discount all the relevant medical opinions formulated by examining sources. Dr. Mintz is an examining source, and the ALJ accorded great weight to his opinion. Moreover, as noted above, the ALJ pointed to specific contrary or inconsistent evidence and explained why he found Dr. Berg's and Mr. Muench's opinions "less persuasive or less significant than the contrary or inconsistent evidence."

Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated November 30, 2020, at Kansas City, Kansas.

>  s:/ *John W. Lungstrum*
>  **John W. Lungstrum**
>  **United States District Judge**